CAITLIN KELLY HENRY, SBN 287949
1201 Martin Luther King Jr. Way #200
Oakland, CA 94612
Telephone: (510) 277-2025
Facsimile: (510) 578-6595
Email: ckh@caitlinkellyhenry.com
Attorney for Plaintiff Stout

JESSE STOUT, SBN 284544
1540 Market St., Suite 490
San Francisco, CA 94102
Telephone: (973) 735-4887
Facsimile: (510) 578-6595
Email: Jesse@jessestoutlaw.com
Attorney for Plaintiff Henry

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CAITLIN KELLY HENRY and JESSE STOUT,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE,<br>    Defendant. | Case No.: 13-cv-5924 DMR<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date: January 22, 2015<br>Time: 11:00a.m.<br>Place: Courtroom 4 – 3rd Floor<br>Magistrate: Hon. Donna M. Ryu |

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

    I. INTRODUCTION .................................................................................................................1

    II. BACKGROUND: INADEQUATE SEARCHES ................................................................1

    III. ARGUMENT: PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT BASED ON THE INADEQUACY OF THE SEARCH ......................................................................2

        A. Legal Standard: Summary Judgment ............................................................2

        B. Legal Framework Under FOIA: Adequacy of Search ....................................3

        C. The FBI's Search Efforts Are Inadequate As It Failed to Use Modern RecordsManagement Systems And Search Methods That Are Likely to Produce Responsive Records ......................................................................4

            1. An Adequate Search Would Include A Key Term Search Of Sentinel ...............5

            2. An Adequate Search Would Include A Key Term Search Of DIVS ..................9

            3. An Adequate Search Would Include A Key Term Full Text Search Of ECF ...12

    V. CONCLUSION ..................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Campbell v. DOJ*,
    164 F.3d 20 (D.C. Cir. 1998) ................................................................................................. 3

*Citizens Comm'n on Human Rights v. Food & Drug Admin.*,
    26 F.3d 1325 (9th Cir. 1995) ................................................................................................. 3

*Hiken v. Dep't of Def.*,
    521 F. Supp. 2d 1047 (N.D. Cal 2007) ............................................................................. 3, 4

*Miccosukee Tribe of Indians of Florida v. U.S.*,
    516 F.3d 1235, 1244 (11th Cir. 2008) ................................................................................. 13

*Nat'l Res. Def. Council v. Dep't of Def.*,
    388 F. Supp. 2d 1086 (C.D. Cal. 2005) ................................................................................ 2

*Nation Magazine v. United States Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ................................................................................................ 3

*Office of Capital Collateral Counsel v. Dep't of Justice*,
    331 F.3d 799, at 802 (11th Cir. 2003) ................................................................................. 13

*People for Am. Way Found. v. United States Dep't of Justice.*
    451 F. Supp. 2d 6, 15-16 (D.D.C. 2006) ............................................................................. 10

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ............................................................................................. 2

*Shapiro v. DOJ*,
    No. 13-0729, 2014 WL 1280275 (D.D.C. Mar. 31, 2014) .............................................. 6, 13

*The Wilderness Socy. v. Bureau of Land Mgt*
    CIV.A. 01CV2210, 2003 WL 255971 (D.D.C. Jan. 15, 2003) ............................................ 3

*Weisberg v. DOJ*,
    705 F.2d 1344 (D.C. Cir. 2 1983) .................................................................................. 2, 3, 4

*Zemansky v. EPA*,
    767 F.2d 569 (9th Cir. 1985) ............................................................................................ 3, 4

**Statutes**

5 U.S.C. § 552 ............................................................................................................. 1, 4, 10, 11

**Rules**

Federal Rule of Civil Procedure 56(c) ................................................................................................ 2

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this Freedom Of Information Act ("FOIA") and Privacy Act ("PA") suit, Plaintiffs Caitlin Kelly Henry and Jesse Stout seek records evincing that the government surveilled causes and advocacy Plaintiffs are associated with, and accordingly, surveilled Plaintiffs. Plaintiffs submitted FOIA/PA requests to the Federal Bureau of Investigation ("FBI") and Department of Justice ("DOJ") on May 1, 2013 and, having received unsatisfactory responses from these agencies, filed suit on December 21, 2013. Because the government's responses to Plaintiffs' FOIA/PA requests and the record in this case raise doubts about the completeness of the searches, the Court should grant summary judgment for Plaintiffs and remand the case to the FBI to conduct a new search. The new search should include full-text searches of ECF, Sentinel, and the Data Integration and Visualization System ("DIVS") by keywords.

## II. BACKGROUND: INADEQUATE SEARCHES

Defendant bears the burden to justify non-disclosure, and must show that its search was reasonable. *See* 5 U.S.C. § 552(a)(4)(B). The record shows that Plaintiffs devoted eight pages, and eighteen exhibits, in their Cross-Motion for Summary Judgment to explaining why full-text keyword searches in particular FBI and USAO record management systems would likely result in discovery of Plaintiffs' records.[1] Defendant's reply alleges that Plaintiffs "vaguely refe[r]" to "other systems of records" and "other search methods"[2] and fail to describe why more sophisticated search systems and methods would be likely to result in responsive records, other than the fact that these systems are "newer."[3] Defendant's allegations are incorrect. Plaintiffs have created a substantial record detailing the nature of the specific systems of records for which they request that the FBI conduct a search. Further, Plaintiffs have demonstrated that these records systems are likely to contain responsive records.

---

[1] Plaintiffs explain FBI and USAO record management in their Opposition and Cross-Motion for Summary Judgment (ECF No. 36) at pgs. 14-23, as well as Opposition exhibits A-R.
[2] Defendant's Opposition to Plaintiffs Cross-Motion for Summary Judgment and Reply In Support of Defendant's Motion for Summary Judgment (ECF No. 38) at p. 5.
[3] Defendant states that "plaintiffs provide no explanation – except that these 'other' systems are newer – as to why search of unspecified other systems would be reasonably likely to generate responsive records." *Id.* at p. 10.

1
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

## III. ARGUMENT: PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT BASED ON THE INADEQUACY OF THE FBI'S SEARCH

The record shows Defendant failed to evidence beyond a reasonable doubt that the FBI completed searches using readily available robust search tools and methods. As an incomplete and unsatisfactory search merits summary judgment in favor of the requester, Defendant's searches using older, less effective tools should be deemed unreasonable and inadequate, and the Court should order searches using the most current technology likely to yield responsive records. Given state of the art technologies available to the FBI, an adequate search would include both a full-text and keyword search of the following electronic systems: DIVS, Sentinel, and ECF. Given the state of advancing search methods, a reasonable search of these systems would include not only a search of Plaintiffs' names and other personal information (date of birth, SSN, residence), but also the initially supplied keywords or other apparent related keywords.[4]

### A. Legal Standard: Summary Judgment

Summary judgment is proper[5] if the parties' filings "show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Plaintiffs are entitled to the benefit of favorable inferences as "the underlying facts and possible inferences are construed in favor of the FOIA requester." *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1095 (C.D. Cal. 2005) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)). In FOIA, "[w]here the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate." *Perry v. Block*, 684 F.2d 121, 127

---

[4] Though Defendant alleges that "[i]t is unclear if plaintiffs contend that FBI should have used the 'key words' that plaintiffs included with their FOIA/PA requests, " *Id*. at p. 9. Plaintiffs reiterate that Plaintiffs are requesting key word and full text searches in each database where this modality is functional.

[5] Contrary to Defendant's assertion, in FOIA cases summary judgment requires that parties present evidence that could be admissible at trial, such as documents that can be authenticated or statements from witnesses that could be called should the matter proceed to trial. "At the summary judgment stage, a party is not required to produce evidence in a form that is admissible, but rather the evidence must be capable of being converted into admissible evidence at trial. *See Gleklen v. Democratic Cong. Campaign Comm., Inc.,* 199 F.3d 1365, 1369 (D.C.Cir. 2000); *see also Richards v. Option One Mortg.,* No. 08 Civ. 0007, 2009 WL 2751831, at 1 n. 3 (D.D.C. 2009) (explaining that hearsay statements may be converted into admissible evidence if a witness with personal knowledge can testify to them at trial)." *Ayuda, Inc. v. Fed. Trade Commn.*, CV 13-1266 (RC), 2014 WL 4829574, at 21 (D.D.C. Sept. 30, 2014).

(D.C. Cir. 1982).

### B. Legal Framework Under FOIA: Adequacy of Search

The agency's FOIA summary judgment burden is to "show beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1351; see also *Zemansky v. United States EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (adopting *Weisberg* standard). The Court must apply a "'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." *Campbell v. United States Dept. of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (internal citations omitted). In evaluating whether an agency's search was adequate, a Court must determine whether the search for those documents was reasonable, construing the facts in the light most favorable to the requestor. *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 26 F.3d 1325, 1328 (9th Cir. 1995) (citing *Zemansky*, 767 F.2d at 571). "Where the scope of the request is broad and the government fails to produce any responsive documents, it may raise a question as to the reasonableness of the search." *Hiken v. Dep't of Def.*, 521 F. Supp. 2d 1047, 1054 (N.D. Cal 2007). An agency cannot limit its search to only one record system, such as the FBI's UNI system, if others systems are likely to reveal the information requested. *See Campbell v. United States Dep't of Justice*, 164 F.3d 28.

To fulfill its burden of demonstrating, beyond a material doubt, that its search was adequate, the agency must present "reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky,* 767 F.2d at 571. These affidavits must "aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal quotation marks, citation omitted). In addition, when determining the adequacy of the agency's search for responsive records the Court must ensure that the agency has "not ... read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester. To conclude otherwise would frustrate the central purpose of the Act." *The Wilderness Socy. v. Bureau of Land Mgt.*, CIV.A. 01CV2210, 2003 WL 255971, at 2 (D.D.C. Jan. 15, 2003) (citing *Hemenway v. Hughes,* 601 F.Supp. 1002, 1005 (D.D.C.1985)).

3
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

### C. The FBI's Search Efforts Are Inadequate As It Failed to Use Modern Records Management Systems And Search Methods Likely to Produce Responsive Records

Here, the record shows that the FBI failed to meet the *Weisberg/Zemansky* burden of demonstrating "beyond material doubt" that the agency conducted a search "reasonably calculated to uncover all relevant documents." The record evidence indicates additional searches using clearly specified methods would be reasonably likely to locate responsive records if the FBI is ordered to conduct a more thorough and reasonable search. The FOIA requires defendant to make "reasonable efforts to search for the records," including "in electronic form or format." 5 U.S.C. § 552(a)(3)(C). In this case the FBI has not made all reasonable search efforts because any reasonable effort would have included a keyword search of the advanced and dynamic DIVS and Sentinel records management systems. Instead, the FBI restricted its search to older systems that use a less powerful index search method, and after prodding from Plaintiffs, a name search in Sentinel. Even if the FBI were correct that these older systems are reasonably likely to locate responsive records, that does not mean that these older systems are the *only* systems the FBI should be required to search for its search to be reasonable. Defendant's declarations fail to show Defendant met its obligation to "conduct a reasonable search for responsive documents using methods which can reasonably be expected to produce the information requested." *Hiken v. Dep't of Def.*, 521 F. Supp. 2d 1054.

Given that the FBI considers finding records in its old systems akin to "find[ing] a needle in a haystack,"[6] limiting its search to the use of these systems is clearly not reasonable. Plaintiffs request that the Court remand to the FBI for further keyword and full-text searches using ECF, Sentinel, and DIVS. In Plaintiffs' Opposition and Cross Motion for Summary Judgment, they asked the FBI to search IDW, Sentinel, and ECF. (ECF No. 36) at 23. The FBI responded by searching Sentinel, but only for Plaintiffs' names. Hardy Suppl. Decl. (ECF No. 38-5) ¶ 8. Defendant stated that IDW is retired, and

---

[6] "For special agents and intelligence analysts, finding specific pieces of missing information in an investigation can be very complicated. The process involves searching through hundreds of databases with individual passwords, manually compiling information from each source, and then trying to sift through the collected information for the missing link. It is like trying to find a needle in a haystack." New Database Search Tool Will Aid Bureau Investigations, FBI, Feb. 14, 2011, http://www.fbi.gov/about-us/itb/news-features/new-database-search-tool-will-aid-bureau-investigations Attached hereto as Exhibit A.

4
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

refused to search the successor DIVS system and older ECF system. *Id*. at ¶ 9, 10. The FBI attempted to address its needle-in-a-haystack problem by developing more comprehensive and efficiently searchable systems such as IDW, Sentinel, and DIVS.[7] As Defendant explains, these three applications were specifically designed to perform different functions. Defendant's Opposition (ECF No. 38) at pp. 7-8. Therefore an adequate search would use these distinct applications because each application and search function's unique architecture potentially yields different results. If tools such as Sentinel and DIVS are specifically designed to provide streamlined and rapid responses to overburdened agents in the field, a search using these high-powered records location systems appears to be "minimally burdensome."[8] Sentinel and DIVS were built to improve efficiency; "DIVS "effectively sift[s] through and prioritize[s] data." Suppl. Hardy Decl. (ECF No. 38-5) ¶ 9, 10. Thus, modern systems are likely to locate a larger number of responsive records because they are structured to cast a wider net in collecting data, and are built with more powerful methods for quickly indexing and combing through the massive data of records they contain.[9] Plaintiffs will now address each system in turn.

### 1. An Adequate Search Would Include A Keyword Search Of Sentinel

The FBI states that Plaintiffs failed to provide any evidence justifying a search of Sentinel, other than it is new. This is inaccurate. Plaintiffs provided evidence to show that Sentinel's technology offered a more sophisticated search algorithm that contained more variables and functions than UNI. Plaintiffs' Opposition and Cross-Motion for Summary Judgment (ECF No. 38) at pp. 12, 13-15. Defendant does not argue to the contrary, and does not put forth any evidence suggesting that the improved Sentinel technology would be unlikely to return responsive records. Then, despite the record indicating the FBI's misgivings about searching Sentinel, the FBI did perform a search of Sentinel. However this search was

---

[7] New Database Search Tool Will Aid Bureau Investigations, Ex. A.
[8] *Id*.
[9] "[P]roviding a single-source search capability that pulls information directly from hundreds of databases and datasets…DIVS provides the capability to search some of the most-used databases, accessing hundreds of millions of documents, all from one location. During development of DIVS, agents and analysts contributed hundreds of requirements to make the process of searching through the databases easier…helping fulfill President Obama's initiative to "improve the intelligence community's ability to collect, share, integrate, and analyze, and act on intelligence swiftly and effectively." DIVS is expanding and will eventually encompass all FBI databases and datasheets and allow search capability for all of the systems from one location." New Database Search Tool Will Aid Bureau Investigations, Ex. A.

5
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

limited to a name search. Suppl. Hardy Decl. (ECF No. 38-5) ¶ 8.

The FBI created Sentinel, in part, because ACS was slow and difficult to use. Plaintiffs' Opposition and Cross-Motion for Summary Judgment (ECF No. 36.) at pp. 17, 19-20. The 9/11 Commission, President Obama, and FBI Staff demanded new tools precisely because staff couldn't perform key word searches as easily before tools like Sentinel developed.[10] To now argue that Sentinel should only be used to search for names ignores the purpose for which the FBI developed this records management system. Sentinel is a powerful tool and allows the FBI to search in a variety of ways, including keyword and full-text searches. Plaintiffs' Opposition and Cross-Motion for Summary Judgment (ECF No. 36) at pp. 19-20. To limit a search of Sentinel to a search by name is unnecessarily restrictive when the FBI has at its fingertips a very powerful system capable of performing searches that are much more sophisticated than merely searching for a name in an index of people who are of ongoing investigative interest to the FBI.[11] The FBI has not provided any evidence to suggest that a keyword search of Sentinel would be burdensome or that it would be unlikely to reveal responsive records.

In this case, a mere name search of Sentinel does not meet the threshold of a reasonable search because Plaintiffs' purpose in asking for a search of Sentinel was to reveal records beyond those revealed in an index name search.[12] While Plaintiffs understand that a search for the term "Pelican Bay

---

[10] New Database Search Tool Will Aid Bureau Investigations Ex. A; The State of Intelligence Reform After 9/11, Statement Before the House Permanent Select Committee on Intelligence, Robert S. Mueller, FBI, Oct. 6, 2011. Attached Hereto as Exhibit. B. Available At
http://www.fbi.gov/news/testimony/the-state-of-intelligence-reform-10-years-after-911

[11] Defendant characterizes Sentinel as another portal to access the CRS, comparing it to the ACS UNI system. Suppl. Hardy Decl. (ECF No. 38-5) ¶ 8 However, Sentinel is more likely to return a search because "The identifiers that can be indexed include persons, organizations, locations, incidents, property, and communication accounts" making its indexing and search functions more sophisticated than ACS. Audit of the Status of the Federal Bureau of Investigation's Sentinel Program, at p. at ii, fn. 4 Attached to Plaintiffs Opposition and Cross-Motion for Summary Judgment as Ex. G.

[12] Furthermore, as the *Shapiro* case shows, the FBI may, as it did with Aaron Swartz, maintain a file specifically about an individual, but title it in a manner that would be non-responsive to both a search for main files and a search for cross-references. *Shapiro v. DOJ*, No. 13-0729, 2014 WL 1280275 (D.D.C. Mar. 31, 2014). The FBI declared that not everything is indexed; conversely, only matters of investigatory interest according to agents' discretion are indexed ("The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") - and, on occasion, support employees – assigned to work on the investigation"; Hardy Decl., pp. 11-12). Thus, if Plaintiff Henry was investigated or surveilled but the FBI decided she was not of interest, the

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

State Prison" might reveal a large volume of records non-responsive to Plaintiff Henry's request, that is not the type of search Plaintiffs ask the FBI to perform. Rather, Plaintiffs ask the FBI to use combinations of search terms that are narrower and reasonably likely to locate responsive records. A key word search for "Henry" and "Pelican Bay State Prison" and "Attorney" would be reasonably likely to locate responsive records and only responsive records. Similarly, a search for "Pelican Bay State Prison" "Attorney" "California Prison Focus" could locate records that are clearly about Plaintiff Henry, but are categorized using another name for Henry, such as "Attorney" or "Counselor" or "Representative." These records would not be located through a name search, despite their responsiveness to Plaintiff Henry's request.

Defendant also argues that when an individual named in a record is not linked to unique identifier such as a Social Security number, the agency would be unable to tell whether the named individual is in fact one of the plaintiffs. In other words, the agency would have no way of knowing whether a record that mentions "Caitlyn Henry" refers to the same Caitlin Henry who is one of the plaintiffs in this case. This argument is specious. Plaintiffs have provided sufficient information from which the FBI could determine whether the records are responsive. And, if the FBI cannot make a determination, the parties can brief the issue of the responsiveness of the documents. However, the FBI should not be allowed to refuse to search a system likely to contain responsive records because of speculation that some of the results might be ambiguous or provide insufficient context from which to determine the identity of the named individual.

Defendant FBI also refuses to use any of the keywords Plaintiffs provided, stating that Plaintiffs provided too many terms and that the terms lacked contextual explanations.[13] Defendant fails to explain

---

FBI may have maintained records on her, despite these records not being indexed. (*Id.*; *see also* Plaintiffs Opposition and Cross Motion for Summary Judgment Ex. Q, at pp. 9-10)

[13] Defendant makes the conclusory comment that, "[g]iven the extensive searches performed using variations of plaintiffs' names, searches for these assorted 'key words' are not reasonably likely to locate records about plaintiffs… given both the number and commonality of the words listed." Defendant states that in this case Plaintiffs provided too many key terms and too broad of a date range (Henry, 37) (Stout, 36) for it to conduct a search using key terms without more context. Defendant's Opposition to Plaintiffs Cross-Motion for Summary Judgment and Reply In Support of Defendant's Motion for Summary Judgment, (ECF No. 38) at p. 10.

7
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

why the keywords suggested would be unlikely to assist a search; Defendant merely concluded that "none of them constitute a valid search terms [*sic*] that would assist in locating information about them." Suppl. Hardy Decl. (ECF No. 38-5) at ¶ 10. In its Opposition Defendant FBI states that there is no bright line duty to use the key words suggested by a requester. (ECF No. 38) at p. 10. While that statement of law is true as far as it goes, it is equally true that the FBI cannot perform a search that ignores *all* the key words suggested while also failing to come up with its own keywords for performing a search. While a requester may not be able to dictate the exact words an agency uses, an agency cannot be permitted to refuse to perform a keyword search of all potentially responsive terms.

The purpose of Plaintiffs' request is to decipher the extent of surveillance of causes and individuals associated with Plaintiffs. The FBI seems to concede that if Plaintiffs presented existing evidence of surveillance in an individualized face-to-face encounter with Plaintiffs' initial request, then the FBI would conduct a robust search.[14] First, this argument unfairly places a burden on the requester that is in fact the burden of the FBI. Second, if the purpose of the request is to reveal whether there was surveillance beyond face-to-face encounters, it does not make sense for the FBI to require requesters to be able to identify a specific incident before it will conduct a search. It may be that for a requester who provides no information other than their name, the FBI is not required to research the requester. However here, Plaintiffs suggested the general nature of the information they were seeking and the fact that they were attorneys and where they resided. There is a variety of information within the four corners of Plaintiffs' request that the FBI could have used, and if the FBI found anything unclear, staff could have contacted requesters for clarification. The FBI never suggested that the request was unclear; it merely ignored the key words. In closing, the reasonableness of a search is a fact specific inquiry. The facts in this case put the FBI on notice that a mere name search of Sentinel would not be sufficient. This is particularly true when the FBI's name search found no responsive records, that the FBI's decision to then disregard all of the other information provided by the requester is an unreasonable decision.

---

[14] Defendant's policy states that "unless a person specifically requests cross-references or requests information regarding a very specific event, which are contained in a cross reference file, the FBI does not search these records." Hardy Decl. (ECF No. 26) ¶ 30, fn. 9.

### 2. An Adequate Search Would Include A Search Of DIVS

Defendant states that Plaintiffs' arguments about IDW should be disregarded because the FBI replaced IDW with DIVS. Plaintiffs argued the FBI should search IDW because IDW was capable of conducting multi-word searches and conceptual searches, as well as extracting names from unstructured text, and performing structured queries of all the data in ACS as well as dozens of other FBI systems. (ECF No. 36) at pp. 20-21.

In its Opposition the FBI provides background information about DIVS. (ECF No. 38) at p. 12. At the time of filing their Cross Motion For Summary Judgment Plaintiffs were not aware that the IDW system was replaced by DIVS. However Plaintiffs' arguments apply to both systems. The FBI itself designed DIVS in response to its identified need to improve searches.[15] The FBI stated that prior to DIVS searching for records was like trying to find a needle in a haystack because analysts would need to search through hundreds of databases.[16] The ability to use DIVS to search hundreds of databases makes it very powerful.[17] The FBI does not explain why the DIVS system would be unlikely to locate

---

[15] "The Data Integration and Visualization System (DIVS) is the FBI's consolidated enterprise platform that further enhances both the search capabilities and the breadth of information that can be accessed through a single sign-on. DIVS will unify all data accessible to the FBI—intelligence, criminal investigative, and other mission data—through one user-friendly search interface, consistent with all applicable legal requirements pertaining to the data." The State of Intelligence Reform 10 Years After 9/11, Statement Before the House Permanent Select Committee on Intelligence, Robert S. Mueller, FBI, Ex. B.

[16] New Database Search Tool Will Aid Bureau Investigations, Ex. A.

[17] "The Data Integration and Visualization System (DIVS) is a web-based application allowing the user to perform advanced searches of existing FBI data systems from a single portal for intelligence and investigative data. DIVS analytical software enables users to search multiple databases using a single, secure, web-based query thereby enabling the aggregation of existing FBI data, including new data as it comes into FBI systems." Request for Records Disposition Authority, May 17, 2011, Attached Hereto as Exhibit C. Available at http://www.archives.gov/records-mgmt/rcs/schedules/departments/department-of-justice/rg-0065/n1-065-11-021_sf115.pdf. "DIVS evolves as technology improves and as new data is received." Statement of Mark. F. Giuliano, Executive Assistant Director, National Security Branch, Federal Bureau of Investigation, Before The Subcommittee on Commerce, Justice, Science, and Related Agencies, Committee on Appropriations, United States House of Representatives, At p. 6 Attached Hereto As Exhibit D. Available at http://appropriations.house.gov/uploadedfiles/08.01.12_cjs_-_fbi_-_mark_giuliano_-_testimony.pdf. "DIVS does not aggregate or convert data; instead, it creates and searches a massive index of the content of the included databases. When the user selects a return for review, DIVS opens that file in its native database application; thus, for example, if a search returns a result from the Data Warehouse System ELSUR Data Management System (DWS-EDMS), a click on

responsive records or explain why a search of DIVS would be burdensome. Rather, the FBI argues that it should not be required to search DIVS because it is an "analytical tool for law enforcement use." Suppl. Hardy Decl. (ECF No. 38-5) ¶ 9. That argument proves too much because every system the FBI has is designed to support analysts in conducting investigations that are for law enforcement purposes.[18] No law enforcement systems are designed to be a repository for FOIA requesters to access. No court has ever looked to the purpose for which a record system was designed in order to determine whether it should be searched. The sole question is whether a search would be reasonably likely to return responsive records.

Courts have, for example, ordered agencies to use systems like PACER to locate records, even though PACER is not designed as a FOIA records management system. *People for Am. Way Found. v. United States DOJ*, 451 F. Supp. 2d 6, 15-16 (D.D.C. 2006). Notably, in this case the FBI searched ELSUR. Clearly ELSUR is a system designed for law enforcement surveillance. The FBI's articulated concern in using DIVS for a FOIA search is that DVIS is designed for law enforcement use. However what seems to be animating the FBI's argument is that a sophisticated, powerful search system should not be used in responding to a FOIA request. This is contrary to the spirit of the FOIA statute.

Defendant appears to be suggesting that the use of DIVS to locate responsive records is not a "search" for responsive records because DIVS is designed for conducting analysis, and therefore is more akin to asking a question to an agency or requiring it to do research. The FOIA's definition of search is "to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(D). FOIA requires agencies to conduct a search. The FBI's mere description of DIVS as an "analytical tool" is not sufficient to demonstrate that

---

that result will take the user to that item in DWS-EDMS. The user then conducts review and further searches of that item in DWS-EDMS." Final Report of the William H. Webster Commission on the Federal Bureau of Investigation, Counterterrorism Intelligence and the Events at Fort Hood, Texas, on November 5, 2009. Attached Hereto As Exhibit E. Available At http://www.fbi.gov/news/pressrel/press-releases/final-report-of-the-william-h.-webster-commission.

[18] "(DIVS) is a web-based application which will allow the user to search existing FBI data systems from a single portal for intelligence and investigative data. DIVS will have advanced search capabilities. DIVS provides users with information needed to successfully accomplish the FBI's mission." Request for Records Disposition Authority, Ex. C.

DIVS cannot also be used as a search tool as defined by the statute. DIVS has the capability to "review….by automated means, agency records for the purpose of locating records that are responsive to request." 5 U.S.C. § 552(a)(3)(D). Indeed that is precisely why DIVS was created, to allow for federated searches of a large number of databases to find the relevant record– "the needle in the haystack."

The "I" in DIVS stands for "Integrated." This means DIVS is integrated to searches not only CRS, but also at least a hundred other databases. Defendant argues that no DIVS search should be conducted because a DIVS search of CRS would be duplicative of the UNI search. The FBI's argument would only make sense if the databases searched by ACS and DIVS were co-extensive. Given that DIVS includes not only the CRS but also many other databases, it would only be duplicative in the sense that CRS would be searched twice. However, the second search, the one Plaintiffs request, would also search at least ninety-nine new locations not previously searched.

More importantly, the UNI application in ACS simply cannot be described as a "search." UNI looks up subjects in an index of matters that are of ongoing investigative interest. However, Plaintiffs did not request that the FBI's search be limited to only records in which Plaintiffs are deemed to be of ongoing investigative interest by a Special Agent. Plaintiffs requested all records referring or relating to Plaintiffs. Thus, using an automated index that only contains a list of the names of subjects of ongoing investigative interest is not an adequate search.

In describing the FBI's search capabilities, the Hardy states that "DIVS is a tool that facilitates the sharing of information from internal and external data sources, to include the CRS." Suppl. Hardy Decl. (ECF No. 38-5) at ¶ 6. Thus there are more locations beyond the CRS that have yet to be searched. Defendant appears to aim to place on Plaintiffs the burden to show that these additional records sources searched by DIVS will contain relevant results. However, the burden lies with the FOIA respondent to reveal information and not withhold it. *See* 5 U.S.C. § 552(a)(4)(B); 5 U.S.C. § 552(d). Therefore, for the FBI's search to be adequate, the FBI must conduct a key word search using DIVS.

11
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

### 3. An Adequate Search Would Include A Full Text Search Of ECF

The FBI refuses to perform a full-text search of ECF.[19] Hardy states that the FBI internal guidelines outline only two circumstances in which the FBI performs an ECF search. Suppl. Hardy Decl. (ECF No. 38-5) at ¶ 11. The first is when the FBI does not find records but believes records exist. The second is when the FBI finds something that gives a positive indication that further records exist. These guidelines improperly place the burden on the requester to demonstrate the existence of a document. In Plaintiffs' case, the name searches performed by the FBI found no responsive records. Therefore the FBI is refusing to conduct an ECF text search because according to its policy Plaintiffs did not demonstrate a reason to think the FBI would have a record. The FBI's policy is flawed in that the FBI will not conduct further searches for records using an unstructured ECF query unless the requester provides specific details showing that the FBI definitively possesses a particular record. All the requester is required to do is adequately describe the records the agency is likely to possess. Here Plaintiffs described the records sought. Hardy's declaration appears to be based on a belief that ECF text search is so burdensome that FBI staff will only search ECF if staff is confident it will return something. Plaintiffs challenge this reasoning. First, Hardy has not adequately demonstrated that it would be in fact burdensome in this case. Second this reasoning is flawed because the requester should not be required to demonstrate that a record definitely exists before the agency will search for it.

The Court does not need to follow the FBI's internal policy. The Court further does not need to determine whether Plaintiffs' request falls in either of the FBI's internal categories. The Court should not allow Hardy to dictate the law. The Court's responsibility is to conduct a *de novo* review and determine whether the search is reasonable, as opposed to defer to an informal policy not promulgated as a regulation, and not supported by fact.

Plaintiffs outlined the nature of their work and indicated why, because of that work, they believe

---

[19] Defendant characterized the "use of the UNI function of ACS to locate information indexed by plaintiffs' name" as "the appropriate feature to search the CRS indices." Defendant's Opposition (ECF 38 at p. 10.) This is inaccurate; Plaintiffs' Cross-Motion and exhibits addressed how neither CRS nor ACS are designed to contain all records relevant to investigations. Plaintiffs' Opposition and Cross-Motion For Summary Judgment (ECF No. 36) at p. 19.

12
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

responsive records exist. It is known to the agency that only subjects of investigative interest appear in the UNI (and even then they do not always appear if the indexing is not performed correctly, *see Shapiro I*). Under these circumstances it is not unreasonable to ask the agency to perform an electronic search of its documents with key words rather than a mere search of its index of documents for Plaintiffs' names alone.[20] As David Hardy stated, sometimes ECF is necessary to obtain a document. Hardy Decl. (ECF No. 26) ¶ 11. Defendant has failed to present evidence that it is impossible or impractical to perform a narrowly designed ECF search, conjunctive of names and key terms, to yield documents responsive to Plaintiffs in particular and not merely their key terms.

## V. CONCLUSION

The purpose of FOIA "is to encourage public disclosure of information so citizens may understand what their government is doing." *Office of Capital Collateral Counsel v. Dep't of Justice,* 331 F.3d 799, at 802 (11th Cir. 2003). Congress enacted FOIA to "enable the public to have access to government information that is unnecessarily shielded from public view." *Miccosukee Tribe of Indians of Florida v. U.S.,* 516 F.3d 1235, 1244 (11th Cir. 2008) (citing *Nadler v. U.S. Dep't of Justice,* 955 F.2d 1479, 1484 (11th Cir.1992), *overruled on other grounds by U.S. Dep't Of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993)).

As a result of the FBI's deficient searches for records in this case, Defendant may have failed to locate records found by employing one or more obvious and readily available key word search techniques, including ECF, Sentinel, and DIVS. The Court should therefore deny Defendant's Motion for Summary Judgment, grant Plaintiffs' Motion for Summary Judgment based on the inadequacy of the search, order Defendant to conduct new searches, and maintain jurisdiction over the case.

---

[20] The present posture of the case is that the parties are submitting Cross Motions for Summary Judgment. To the extent that the record contains insufficient information as to the burdensomeness of an ECF search, for example how many hours it would take to perform, the Court may wish to hold an evidentiary hearing and require Mr. Hardy to testify.

13
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
CAITLIN KELLY HENRY, et al. v. DOJ; Case No.: C13-5924 DMR

DATED: December 22, 2014 /s/

_____
CAITLIN KELLY HENRY
Attorney for Plaintiff Jesse Stout

DATED: December 22, 2014 /s/

_____
JESSE STOUT
Attorney for Plaintiff Caitlin Kelly Henry